DOUCET, Judge.
This is a worker’s compensation suit instituted for Anthony Lynn Miller against the United States Fidelity & Guaranty Company, the worker’s compensation insurer of his former employer, Coastal Drywall. He seeks permanent total disability benefits as a result of an accident which occurred on July 20, 1982. Defendant’s appeal from a trial court judgment holding the plaintiff temporarily totally disabled and awarding benefits. The plaintiff answered the appeal seeking permanent total disability.
The evidence shows that on July 20, 1982, Miller was working on a construction site in Lake Charles. While he was moving a scaffold, a bucket of sheetrock mud, weighing approximately 50 pounds, hit him on the head. Although Miller was wearing a hard hat at the time, he received emergency room treatment at St. Patrick’s Hospital and was sent home. He returned to work the next day. On August 11, 1982, Miller was admitted to the hospital by Dr. Shamieh, complaining of headaches and dizziness. Shamieh had treated Miller for similar symptoms before the accident. However, he testified that after the accident the problem occurred more frequently and was more severe. He further stated that after the accident, the headaches were vascular in origin as opposed to being tension headaches as before the accident.
Dr. Shamieh’s neurological findings were normal. He treated Miller with medication. On or about August 16, 1982, Dr. Shamieh released Miller to return to work. Miller continued work for Coastal Drywall until the end of August when he was laid off in a general cutback. He saw Dr. Shamieh again in September when he reported only one headache since his last visit. While unemployed, he helped a friend harvest rice. In January 1983, he was employed by Lloyd Moreau. He was laid off after two weeks when the job was finished. In June and July of 1983, he was employed by Dennis Young Carpet Services doing light clean-up work.
After consulting an optometrist, Miller was referred to Dr. William Foster. Miller saw Dr. Foster on July 13, 1983, complaining of headaches at the base of the skull, dizziness and intermittent tingling in the left upper extremity. Miller was admitted into the hospital for several days. Dr. Foster found no disabling organic pathology, but was not of the opinion that Miller was malingering. His diagnosis was post-traumatic stress syndrome. Dr. Foster’s office referred the plaintiff to Dr. Edmund Camp III, a psychiatrist. He also diagnosed Miller to be suffering from post-traumatic stress syndrome. He found Miller to be depressed, anxious and angry, suffering from slowed thinking, retarded speech, hy-persomnia, and a moderate to moderately-severe constriction of interests. Camp admitted Miller to the hospital on July 19, *202 1983. He was released on August 3, 1983. Miller was found to be suffering from pre-diabetes, post-traumatic stress syndrome, chronic depression, carbon monoxide toxicity poisoning (from smoking) resulting in headache, hormonal imbalances, traumatic arthritis and obesity. He was treated with diet, vitamins, high blood pressure medicine (although Miller did not have high blood pressure), and L-tryptophane, for hormonal imbalances. He was advised to cut down on his smoking. Dr. Camp continued to treat him with psychotherapy.
On August 10, 1983, Miller was again admitted to the hospital suffering from a severe bacterial infection, as well as continuing manifestations of post-traumatic stress syndrome. The testimonies of Dr. Camp and Mrs. Miller indicate that while in the hospital, Miller became suicidal and preoccupied with a fear of killing his wife and children. Dr. Camp treated him with anti-psychotic medication. Dr. Camp testified that he could not allow Miller to return to work because of destructive urges.
Miller’s wife, Deborah, testified that since the accident, Miller’s personality had changed. He became forgetful, was easily angered, and that they had sexual problems. She stated that before the accident, he was a happy person, enjoyed a good relationship with his children, and participated in many activities, including hunting, fishing, gardening, bowling, and cards. After the accident, he lost interest in all these activities. She stated that while he had some good days, he would slip back into depression and bad temper. This testimony was corroborated by Deborah Miller’s father, Earl James Young, and her uncle, Dennis Young.
Dr. Giles Morin, an expert witness for the defendant in the field of psychiatry, examined Miller on February 20, 1984. On the basis of that examination, he diagnosed Miller as having intermittent explosive disorder, or explosive personality which would be best alleviated by going back to work. He stated that post-traumatic stress disorder only arises after a life-threatening experience. He further stated his belief that many of Miller’s problems, including the suicidal/homicidal tendencies, were the result of over-medication. This diagnosis was supported by the plaintiff’s own testimony that he had not experienced any suicidal/homicidal tendencies prior to treatment from Dr. Camp.
Miller filed this suit on May 31, 1983. After trial, the district court held that the plaintiff was temporarily totally disabled and awarded benefits and expenses. The defendant appeals, alleging that the trial court improperly excluded medical evidence, failed to give proper weight to medical evidence rebutting plaintiff’s claims, and that the plaintiff failed to carry his burden of proof.
The plaintiff answered asking that the judgment of the trial court be modified to declare the defendant to be permanently totally disabled and to award penalties and attorney’s fees, for arbitrary and capricious failure to pay benefits.
DISABILITY
The trial judge stated in his reasons for judgment that “The evidence reflects that the defendant is suffering from some kind of traumatic neurosis that relates directly to the injury on July 20, 1982.”
The reasons for judgment further indicate that, in order to reach its finding, the trial judge rejected the testimony of Dr. Morin and accepted the testimony of Dr. Camp. This decision was based primarily on the fact that Dr. Camp, as treating physician, had more opportunity to view the petitioner more thoroughly.
At the time of trial, Dr. Camp had treated Mr. Miller over a period of she months, spending between three and four hundred hours with him. Dr. Morin saw Mr. Miller only once and spent less than an hour with him.
“Appellate courts must give weight to the conclusions reached by the trier of fact, and where there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal absent clear error. Canter v. Koehring *203 Co., 283 So.2d 716 (La.1973); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975), writ denied, 310 So.2d 641 (La.1975).” Bren Lynn Corp. v. Valliere, 434 So.2d 600 (La.App. 3rd Cir.1983).
Our review of the record causes us to conclude that the judge was not clearly wrong in finding that plaintiff carried his burden of proof.
The recent case of Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320 (La.1985), repeats the evolving jurisprudence on the burden of establishing disability and its causal relation with the employment accident:
“In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found, (citations omitted) A claimant’s disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, (citations omitted) or that the nature of the accident when combined with the other facts of the case, raise a natural inference through human experience of such causal connection.”
In the present case there is no question that plaintiff suffered an accident when the bucket of sheetrock mud fell on his head. Although some of the same symptoms he thereafter suffered had troubled him before the accident, such as headaches, there is no question, according to the doctors who saw him before he was referred to the psychiatrist, as well as the lay testimony, that personality changes and his physical symptoms following the accident increased in both amount and intensity. Two physicians, first Dr. Foster and later Dr. Camp, believed that he was suffering from a post-traumatic stress syndrome.
We note also that even Dr. Morin, the only medical witness for defendant, recognized that plaintiff was suffering some kind of mental problem, although it was this doctor’s opinion that the problem was primarily the result of over-medication by Dr. Camp. The trial court properly excluded testimony by Dr. Morin regarding the condition of former patients of Dr. Camp, who came to him for treatment. All the evidence with regard to Miller’s condition was admitted and considered. The condition of Dr. Camp’s other patients could have no relevance to the condition of Mr. Miller.
Defendant has filed a motion asking us to remand this case so that the trial court may consider newly arisen matters relating to the qualifications of the psychiatrist, Dr. Camp. We cannot do that. At the time of the treatment rendered to plaintiff by Dr. Camp, that doctor was licensed to practice psychiatry in Louisiana. Plaintiff was referred to this doctor by one of his treating physicians. The plaintiff sought treatment from Dr. Camp only because another doctor told him to. After studying this record closely, we find support in the record — though we do not rule on the matter — for defendant’s contention that plaintiff’s condition was aggravated (at least the suicidal episode) by over-treatment at the hands of Dr. Camp. However, even if we were to conclude this as a fact, this would not relieve defendant from liability for worker’s compensation benefits. An employer is liable for worker’s compensation due to improper medical treatment if these complications are causally related to the on-the-job accident. Blount v. Cooper Stevedoring Co., Inc., 416 So.2d 358 (La. App. 4th Cir.1982) writ denied, 420 So.2d 457 (La.1982).
For these reasons, we affirm the finding that plaintiff is entitled to benefits. The trial judge awarded benefits on the basis of temporary total disability. The plaintiff answered the appeal seeking total permanent disability. We believe that he is enti- *204 tied to an award for permanent total disability, for the following reasons.
When the claimant is shown to be totally disabled at the time of trial and the duration of such disability is indefinite or the evidence does not clearly indicate its duration, permanent total disability should be awarded. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976). In the present case the evidence failed to establish the duration of Miller’s disability. Dr. Camp equivocated, first saying that Miller’s problem was incurable, and then suggesting that his might be an exceptional case. Dr. Morin felt that the plaintiff would be well as soon as he got off of Dr. Camp’s excessive medication and went back to work. Since the record does not clearly indicate the duration of the disability, permanent total disability must be awarded.
Plaintiff has also answered the appeal asking that we award attorney fees and penalties. We agree with the trial court that the circumstances of this case do not justify such an award.
Accordingly, the judgment of the district court is amended awarding permanent and total compensation benefits to Anthony Lynn Miller beginning May 27, 1983, under the provisions of LSA-R.S. 23:1221(2). All other portions of the judgment are affirmed and the costs of this appeal are assessed to appellee.
AMENDED AND AFFIRMED.