597 So.2d 114 (1992)
Shelia SMITH
v.
MERCY HOSPITAL.
No. 91-CA-2562.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
*115 William R. Mustian, III, Stanga & Mustian, Metairie, for plaintiff/appellant.
Teresa C. Leyva, Dennis Paul Juge, Sutherland, Juge, Horack & Dwyer, for defendant/appellee.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
LOBRANO, Judge.
This appeal arises from a judgment in favor of defendant-appellee, Mercy Hospital and against plaintiff-appellant, Shelia Smith, denying Smith's claim for worker's compensation benefits for mental injuries allegedly sustained by Smith during the course and scope of her employment at the hospital.
FACTS:
Shelia Smith was employed at Mercy Hospital from March 11, 1986 through August 22, 1989 as a computer programmer. Smith did not return to work on August 23, 1989. She sought treatment from Dr. Leonard Glade for physical and emotional problems. Dr. Leonard Glade subsequently referred Smith to Dr. Susan Glade, a psychiatrist.
Dr. Glade diagnosed Smith as suffering from an adjustment disorder and depression associated with job stress and conflict and advised Smith not to return to work. In December, 1989, Dr. Glade released Smith to return to work. Smith suffered a relapse which Dr. Glade attributed to her attempt to return to work too quickly. In March, 1990, Dr. Glade again advised Smith not to return to work and continued to treat her.
Smith received unemployment compensation from January, 1990 through March, 1990. Smith's claim for worker's compensation benefits was denied by Mercy Hospital.
On December 14, 1990, her claim was heard by the Office of Worker's Compensation. Judgment was rendered on February 22, 1991 in favor of Mercy Hospital. In his reasons for judgment, the hearing officer found:
"... Dr. Susan Glade testified by deposition that there was a subjective reaction to several incidents on the job which are not unusual but which were perceived by the claimant as being unusual. Dr. Richard Roniger testified that the claimant is not psychiatrically disabled. The lay testimony on behalf of the claimant is not impressive. Only the claimant testified on her behalf with regard to lay testimony, and the incident she related, such as being denied vacation time and having to work nights, were no more than would be expected from any employee who had been employed in a position such as she had for the employer. It is not unusual for an employer to tell his employee for various reasons the employee may not have a vacation or the employee would have to work nights. The right of the employee under those circumstances is to quit, if he or she is not satisfied with the job conditions. After considering all of *116 the evidence in his case, the Hearing Officer is not convinced that the employment in any way precipitated, accelerated, exacerbated or caused the alleged disability of the claimant. The evidence on this issue preponderates in favor of the Employer."
TESTIMONY ADDUCED AT THE HEARING:
SHELIA SMITH:
Shelia Smith testified that she experienced psychiatric injuries incapacitating her from performing her job duties. These injuries, she claimed, were as a result of stress caused by harassment from her supervisors. Smith stated that several months prior to August 22, 1989 she experienced several stressful incidents with her supervisors but was able to continue with her job duties. One incident involved a supervisor telling her not to stand behind and look over the shoulder of another employee because it would appear that she was wasting time. This supervisor suggested that if she had some free time she should go into the computer room and read a book. Another incident involved a supervisor reprimanding her for returning late from lunch and told her "I'm going to write you up." A third incident involved a new job description which Smith claimed was changed without her knowledge or input. A fourth incident involved a supervisor ordering Smith to move a piece of computer equipment. When she explained that it was too heavy, the supervisor commented "I don't know what kind of body you have for a woman" and left the room. Smith testified that these incidents troubled her but she was still able to function. In August of 1989, however, Smith testified that two specific incidents occurred which caused such emotional trauma that she was unable to return to work. She testified that in July, 1989 she requested and was granted a vacation. Smith stated she was looking forward to this vacation because of the job stress. Additionally, Smith testified that she was told several months prior to August 22, 1989 that she would not have to work the night shift. On or about August 15, 1989, Smith stated she was told by one of her supervisors that her vacation had been cancelled. Several days later she was informed that she would have to work the night shift. Smith stated she was emotionally devastated. She testified she began to manifest mental disorientation, confusion, a sense of feeling "drained", depression, headaches, lethargy and weakness of the limbs. She stated that on August 22, 1989, she worked the entire day feeling ill and "out of it". She was physically and emotionally unable to return to work. Smith sought medical treatment from Dr. Leonard Glade who subsequently referred her to Dr. Susan Glade, a psychiatrist. Dr. Susan Glade placed Smith on Tofranil and another medication which Smith could not remember. She stated she attempted to return to work in December, 1989 but was feeling "jittery" and was unable to return. She attributed her relapse to reliving the events at the hospital after giving a statement to the insurance company.
On cross-examination Smith admitted that when she was originally hired it was to work the night shift. In addition, she agreed that the work schedules are the responsibility of the supervisors. She stated she had always been given merit raises and good evaluations and had never been "written up".
CHARLES CREDO:
Charles Credo, Loss Prevention Manager for Mercy Hospital, testified that following Smith's complaints of harassment by her supervisor, he personally interviewed John Wilbanks and Ed McGinnis and concluded the complaints were unfounded. He further testified that Smith's vacation as cancelled due to the illness of another employee and that vacation schedules are within the supervisor's discretion. He stated that the hospital policy regarding night shifts is that all employees work at the discretion of the hospital.
*117 DR. SUSAN GLADE:[1]
Dr. Susan Glade testified that she first saw Smith on August 30, 1989. Smith complained of depression and anxiety related to job stress. Smith related that she felt she was being unfairly treated because employees with part time or temporary positions were given privileges that she was denied. She complained of nervousness, headaches, irritability, insomnia, difficulty with concentration, shaking, weakness in her legs and weight loss. Dr. Glade diagnosed Smith as suffering from an adjustment disorder with depression. During the course of her treatment with Dr. Glade, Smith was prescribed two antidepressants, Pamelor and Tofranil.
Dr. Glade next saw Smith on September 7, 1989. She was still depressed. She was referred to the out-patient group at Coliseum Medical Center.
By March, 1990, Smith was again placed on no-work status after having been released in December, 1989 to return to work. Dr. Glade stated that she felt Smith had attempted to reenter the job market too quickly. Smith's no work status continued until June, 1990 when Dr. Glade testified that Smith could, from a psychiatric standpoint, return to some type of employment.
DR. RICHARD RONIGER:
Dr. Richard Roniger testified for Mercy Hospital. He stated that he first saw Smith on June 4, 1990. Dr. Roniger performed a mental status examination. He found no evidence of neurological disease. He described her as moody and disgusted. She displayed anger toward Mercy Hospital. She stated she was unfairly treated by her supervisors. She told Dr. Roniger that she hoped to return to work at Mercy as a computer programmer. Following the examination, Dr. Roniger found Smith to be mentally stable with no psychiatric illness. He noted that the most outstanding "feature" was that she was angry. He testified that he found there may have been a brief adjustment disorder with mixed emotional features at the time she was treated by Dr. Glade. He found no psychosis at the time he examined her and recommended no further evaluation.
THE LAW:
Although procedural rules are construed liberally in favor of worker's compensation claimants, the claimant retains the burden of proving by a preponderance of the evidence that a work related accident took place. The testimony, as a whole, must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Bistes v. Asplundh Tree Expert Co., 499 So.2d 402 (La.App. 4th Cir.1986).
Whether a claimant suffered a work related injury is a question of fact and a credibility determination which will not be disturbed on appeal where the evidence furnishes a reasonable factual basis for the trial court's finding, unless those findings are clearly wrong. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Bistes v. Asplundh, supra; Flood v. Hub Auto Parts, Inc., 425 So.2d 941 (La.App. 4th Cir.1983), writ den., 429 So.2d 158 (La. 1983).
Louisiana Revised Statute 23:1021 was amended by Acts 1989, No. 454 effective January, 1990.[2] Pursuant to the *118 amended act, a claimant must prove that the mental stress and injury occurred as the result of a sudden, unexpected and extraordinary stress and must be demonstrated by clear and convincing evidence. However, Smith's alleged injuries occurred in August, 1989, before the act's effective date. Prior to the amended legislation, the applicable legal standard regarding the issue of mental injury was enunciated in Sparks v. Tulane Medical Center, 546 So.2d 138 (La.1989) and its comparison case, Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989). Smith cites Sparks and Williams as authority for the assertion that she sustained a compensable accident. We disagree. Smith's reliance is misplaced.
In both Sparks and Williams, dramatic, unusual and readily identifiable events occurred which precipitated the claimant's injuries.[3] The high court stated:
"... In cases involving such readily identifiable, unusual and dramatic events, compensation is appropriate when there is sufficient evidence that the sudden event caused the disabling mental condition. On the other hand, absent an identifiable accident of this type an employee's general allegations that he is unable to work due to stress or tension caused by working conditions would not give rise to a compensable claim." Sparks, supra, at p. 147.
In the instant case, the complaints and events alleged by Smith are general conditions of employment and are not unusual, or dramatic. Absent the kind of events which occurred in Sparks and Williams, Smith' general allegations that she was unable to work due to stress because she felt she was unfairly treated does not give rise to a compensable claim. Thus, we find no error in the denial of her claim for worker's compensations benefits.
For the reasons assigned above judgment of the hearing officer is affirmed.
AFFIRMED.
NOTES
[1] Dr. Glade's testimony was via a sworn deposition of October 23, 1990 which was introduced into evidence.
[2] The amended act provides as follows:

"(1) `Accident' means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
* * * * * *
(7)(a) `Injury' and `personal injuries' include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
(b) Mental injury caused by mental stress. Mental injury or illness resulting from work related stress shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this Chapter, unless the mental injury was the result of a sudden, unexpected, and extraordinary stress related to the employment and is demonstrated by clear and convincing evidence."
[3] In Sparks, the claimant was subjected to harassment by employees she supervised from 1984 through April 6, 1987. The harassment included urinating in her coffee pot and waste basket. Incidents of vandalism in which water was poured into supply bins, ruining the medical supplies also occurred. Claimant's testimony was corroborated by other employees as well as reports from the medical center's security office. The court found the events occurred over a period of years and were designed to harass and intimidate. The final incident occurred when Sparks received threats of bodily harm. Williams also involved dramatic, unusual and identifiable events. Williams was arrested at work following allegations that he had stolen money. He was ultimately found innocent and cleared of all charges.