JiDOUCET, Judge:
In this workers’ compensation ease, plaintiff, Henry McCoy, appeals a judgment of the administrative hearing officer denying his claim for benefits. We affirm.

FACTS

It is the facts which are at issue in the case. Plaintiff, Henry McCoy, claims that on February 28, 1991, he fell off a stack of logs while trimming them. He asserts this accident is the cause of the injuries of which he complains. The defendant avers no such accident took place and that plaintiffs complaints are due to preexisting and ongoing medical problems including diabetes and hypertension, and a bout of acute pyelonephri-tis.
Mr. McCoy had been employed by Monroe Timber Company[1] for a number of years before this alleged accident. During that time his primary job was “skidder operator”; however, he also, on occasion, supervised a crew and, at other times, trimmed felled logs.
|20n the morning of February 28,1991, the skidder which Mr. McCoy usually operated blew a headgasket, so plaintiff was reassigned to the job of trimming logs in the “set”. The set is that area to which freshly cut logs were pushed or dragged to await being loaded onto trucks for their trip to the mill. In the set branches are trimmed off the logs with chain saws before they are loaded. After the logs are loaded the ends are cut off, if necessary, so that the load does not exceed a specified length.
It was established that it was wet and muddy in the woods on February 28, 1991. Mr. McCoy testified that he was standing atop a two or three foot high stack of logs, trimming them, when, because of the mud, he slipped and fell to the ground landing on his back or side. McCoy claimed he was alone in the area at the time, that he picked himself up out of the mud, retrieved and cleaned his chain saw, and went back to work. There is no dispute to the fact he finished out the day.
According to plaintiff, that evening, as the crew prepared to leave the work area, Mr. Monroe asked him to walk about 50 feet, from next to the truck where they were standing, to retrieve a second chain saw. *1385 McCoy testified that he told Mr. Monroe that he was unable to walk over and get the saw because he had fallen earlier in the day and injured his back.
Mr. Monroe, on the other hand, testified that plaintiff was never alone in the set. Monroe stated that throughout the day there were truck drivers waiting to load their trucks, men pushing or dragging logs to the set, and that from approximately 10:00 A.M. till the end of the day he was personally at the set. Further, Mr. Monroe denied the alleged “chain saw conversation” at the end of the day.
Mr. McCoy claimed that when he fell to the wet, muddy ground his clothes became covered with mud. However, Mr. Monroe stated that McCoy rode in with him that evening in Monroe’s new pick-up truck, and that he (Monroe) would not have permitted anyone full of mud to sit on his new seats.
Plaintiff could produce no one who had any first hand knowledge of his fall. At one point in his testimony he claimed to have told his boss of his fall on the evening it happened, yet later in his testimony he claimed to have tried for approximately a month to contact Mr. Monroe to notify him of his (plaintiffs) fall and injuries. McCoy claimed he was under the impression that the senior Monroe was the only person to whom he could speak about an accident and that he was unaware he should have immediately made out an accident report.
IsThe foregoing was contradicted by testimony from Mr. Monroe and his daughter, Beverly, the business’ officer manager. Both testified that all of the employees knew that in the case of an accident it was to be reported to their crew supervisor, or if he was not available, either of Mr. Monroe’s sons (who also worked in the business), Beverly or Mr. Monroe, and that an accident report had to be filled out as soon as possible. Plaintiff admitted, that as a “sometimes” crew supervisor, he was aware that the company required an accident report be completed if anyone on his crew had an accident.
Following the alleged accident of February 28, 1991, plaintiff first sought medical attention at the emergency room of Huey P. Long Medical Center in Pineville on March 8,1991. The records of that visit make no mention of Mr. McCoy complaining of a fall, but rather relate his main complaint as “... right foot discomfort after working all day. Complains of soreness on sole of right foot, big toe and second toes”. The nurse’s notes from that visit note that Mr. McCoy also complained of swelling in his legs and back pain running down his legs. His vital signs included a blood pressure reading of 162 over 110. His medical history revealed McCoy was under treatment for hypertension and diabetes. Medical testimony indicated that both high blood pressure and diabetes are often accompanied by swelling in the legs and feet. Plaintiff was also subsequently diagnosed with pyelonephritis, an inflammation of the Mdney(s) which, according to medical testimony, has as one of its chief symptoms low back pain.
When plaintiff consulted his family physician, Dr. John Luke, on April 25,1991, he did report a fall at work on February 28, 1991, and resulting back pain. Dr. Luke’s examination of his patient revealed no muscle spasms, no bone or disc problems, a “fairly good range of motion” in the back and no complaints of pain radiating into the lower extremities. X-rays of Mr. McCoy’s back, taken at that time, were normal. Dr. Luke stated that he was more concerned with plaintiffs blood pressure which was 186 over ISO at the time. He stated he had no opinion as to whether his patient could have returned to work on April 25th. He said that he left such decisions up to his patients, but that he would have given Mr. McCoy a release to return to work if one had been requested.
Plaintiff did return to Dr. Luke two or three times with complaints of continuing back pain. On those visits he also continued to have problems controlling both his blood pressure and his diabetes. As Dr. Luke was a family practitioner and could find no obvious reason for Mr. McCoy’s [ complaints concerning his back, he referred plaintiff to Huey P. Long Medical Center. It was shortly thereafter that McCoy was admitted to the medical center for pyelonephritis.
*1386 The only doctor to examine Mr. McCoy and find any objective signs of back injury was Dr. Vanda Davidson. However, Dr. Davidson was not consulted until June 8, 1992, more than 15 months after plaintiffs alleged fall and after plaintiff was involved in a subsequent automobile accident. At trial plaintiff denied he had suffered any injury in the automobile accident.

LAW

The Louisiana Supreme Court recently discussed a worker’s burden of proof in establishing the occurrence of an unwitnessed accident in Bruno v. Harbert International Inc., 593 So.2d 357, 360-361 (La.1992):
As a threshold requirement, a worker in a compensation action must establish “personal injury by accident arising out of and in the course of his employment.” LSA-R.S. 23:1031 (emphasis supplied).
* * ⅜ * * *
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). [ ... ] Moreover, Louisiana courts view the question of whether there was an accident from the worker’s perspective. Williams, supra.
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker’s burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson, [v. Roadway Express, Inc.], supra [588 So.2d 350 (La.1991)]. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers’ Compensation, Sec. 253 (2d Ed.1980). [ ... ] The trial court’s determinations as to whether the worker’s testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. Gonzales v. Babco Farms, Inc., 535 So.2d 822, 824 (La.App.2d Cir.), writ denied, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court’s decision is based solely upon written reports, records or depositions. Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987).
The standard of review which we must apply in examining the actions of a trier of fact was most recently expounded upon by our supreme court in Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882-883 (La.1993), wherein the court stated:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 5840 (La.1989). This court has announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
... [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact-finder’s conclusion was a reasonable one. *1387 See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
While this court may have found differently, given the same testimony and evidence presented the trier of fact in this case, we cannot say that no reasonable factual basis exist for the finding by the administrative judge; nor can we say that her finding was manifestly erroneous.
Accordingly, for the reasons stated above, the judgment appealed is affirmed.
AFFIRMED.
COOKS, J., dissents.

. Originally named as defendants were Monroe Timber and its workers’ compensation carrier, Protective Casualty Insurance Company. Due to the insolvency of Protective Casualty, Ae Louisiana Insurance Guaranty Association (LIGA) was added as a defendant. Also added as a defendant was Roy O. Martin Lumber Company, plaintiff's alleged statutory employer. At the close of plaintiff's case Ae latter was dismissed.