588 So.2d 350 (1991)
Roosevelt NELSON
v.
ROADWAY EXPRESS, INC.
No. 91-C-0441.
Supreme Court of Louisiana.
October 21, 1991.
Rehearing Denied November 21, 1991.
*351 Lawrence K. McCollum, Shreveport, for applicant.
Frank M. Walker, Jr., Lunn, Irion, Johnson, Salley & Charlisle, Shreveport, Brian L. Coody, Lake Charles, for respondent.
WATSON, Justice.
In this worker's compensation suit, the issue is whether the trial court clearly erred in holding that Roosevelt Nelson failed to prove an accident in the course and scope of his employment with defendant, Roadway Express, Inc. LSA-R.S. 23:1021(1); 23:1031.

FACTS
Nelson worked at Roadway for almost fourteen years. He was a dock checker: a checker on a freight dock loads and unloads boxes from large trailers. Because the work is strenuous and involves boxes weighing more than fifty pounds, back injuries are common. Nelson had no serious prior injuries; his average weekly wage was $531.85. Nelson, then 51 years old, said he had an accident Friday night, February 27, 1987, near the end of his shift. He caught a falling box and felt a pull or sting in his back.
Woodward, a co-worker, saw Nelson leaving work that evening. Nelson was favoring his left side and walking in a stooped position. Woodward asked about the problem, and Nelson replied that he had hurt his back unloading freight. Because Nelson appeared to be in considerable pain, Woodward offered to drive him home. Nelson rejected Woodward's offer, saying he could drive and was going home to soak his back.
Johnson, another co-worker, also saw Nelson. Nelson, a wiry person who generally walks fast, was moving slowly from the dock to the parking lot. He told Johnson that he had hurt his back, was on his way home to soak in a hot tub and did not *352 have time to talk. Although Johnson was not on the Roadway work roster that Friday evening, he testified that he was on the premises, probably picking up his paycheck.
After his shift ended at 9:30 p.m., Nelson drove directly home. When he arrived, his back was stiffening; his wife asked what was wrong. Nelson took a bath, ate a light supper and went to bed. Around 1:00 a.m., he awoke with severe pain on the left side of his lower back, the worst pain he had ever encountered.
Nelson called Roadway's manager, Stinson, around 7:30 a.m. Saturday morning to report his back injury. Nelson went to the emergency room of Willis-Knighton Medical Center at approximately 9:30 a.m. Nelson told the nurse and doctor that he had hurt his back lifting heavy boxes at work. Dr. Harry E. Fair, Jr., the emergency room physician, said Nelson's paraspinous muscles were tight and tender. Dr. Fair stated: "Many of these muscles were in spasm and were quite uncomfortable." (Deposition, p. 11). Dr. Fair said objective signs of injury were a positive straight leg raising test and the tender paraspinal lumbar muscles. Dr. Fair diagnosed a lumbar back strain, prescribed Tylenol No. 3 and Naprosyn and referred Nelson to his own doctor.
Nelson has over 27 years of work experience, including a job at the Dallas Police Department and truck driving jobs at Daltex Express and Braswell Motor Freight, but this is his first serious injury. His education is limited; he did not graduate from high school.
On Sunday, March 1, 1987, Nelson completed a Roadway report of injury with the assistance of "Buddy" Capps, his shift supervisor. The report states that the injury occurred while Nelson was "breaking freight", that is, unloading freight. On the diagram attached to the report of injury, Nelson circled his lower back.
On Monday, March 2, Nelson went to the company doctor, Dr. A. Abbot Bullock. Nelson exhibited marked muscle spasms, indicating considerable pain. By March 9, Nelson was beginning to show definitive and localizing signs of disc injury. Dr. Bullock suggested an orthopedic consultation and referred Nelson to Dr. Matthew Ragan Green, Jr.
Roadway insinuates that Nelson faked an injury because he received three warning letters near the end of his Friday evening shift. One letter concerned blocking an aisle with a piece of flat steel; a second involved damaged freight; and a third cited a clerical error. Capps testified that Nelson's job was not in jeopardy because of the letters. The letters are irrelevant because Nelson proved an injury beyond any doubt.
Long, the assistant terminal manager, studied Nelson's compensation claim by examining Nelson's employment record, his report of injury and Stinson's handwritten notes. Long concluded that Nelson was not specific enough about the details of his accident. Although both Dr. Fair and Dr. Bullock observed objective symptoms of injury, Long did not talk to either doctor. Without further investigation, he formally denied Nelson's claim on Monday, March 2 and told Nelson that his medical bills would have to be paid by union insurance.
Dr. Green testified as an expert in the field of orthopedic surgery. He first saw Nelson on March 10, 1987, when Nelson described a job injury on February 27. According to Green, Nelson's scenario was common. Nelson did not have a major disc rupture but a low grade disc bulge, which gradually deteriorated and inflicted pressure on the nerve root, exacerbating the injury. In Dr. Green's opinion, Nelson had sustained "a straining type injury with probably some element of injury to the disc." (Tr. 327).
Dr. Green prescribed a muscle relaxant, anti-inflammatory medication, and an exercise program, which seemed to result in some improvement. However, on March 31, Nelson was having increasing pain radiating into the buttocks and an injection was prescribed. The injection produced improvement through April and most of May, but on May 29, Nelson had radiating pain in his left leg and a decreased ankle jerk on the left side. A lumbar myelogram revealed a herniated disc at L4-5. On June *353 16, Nelson had no ankle jerk on the left side and was scheduled for an E.M.G., a nerve conduction study. Surgery was scheduled for October 26, 1988, but was postponed because payment through worker's compensation was not available.
In the interim, on May 21, 1987, the Louisiana Department of Labor Office of Worker's Compensation recommended paying Nelson's claim for compensation and assessed penalties and attorney's fees against Roadway. (P.-7).
Nelson had surgery on January 26, 1988: a hemilaminectomy at L4; a foraminotomy at L4; and a hemilaminectomy at L5. A hemilaminectomy is surgical removal of a vertebral lamina on one side only. A foraminotomy removes the roof of intervertebral foramina to relieve nerve root compression. The medical expenses were paid by Nelson's union insurer, Central States Southeast and Southwest Areas Health and Welfare Fund. Central States initially denied the claim as work related and holds a subrogation of Nelson's right to recover against Roadway.
Long admitted telling Nelson to file his medical claim with Central States and to tell Central States he did not get hurt on the job. Long's report states that Nelson's injury occurred off Roadway's premises while Nelson was in bed on Saturday morning. Nelson's claim to Central States also says that he got hurt in bed.
Dr. Green concluded that Nelson sustained a straining back injury, which caused bulging of the disc and compression of the nerve root. This type of injury can unfold over a long period of time and a slight delay in the onset of severe symptoms is common. In Dr. Green's opinion, the lifting injury described by Nelson was more probably than not the cause of the herniated disc for which surgery was performed.
Dr. Green discharged Nelson in April of 1988 with a ten percent disability of the body as a whole and a maximum lifting limitation of fifty pounds. Frequent repetitive lifting was limited to twenty-five pounds. The disability prevents frequent bending, stooping and lifting of light and heavy weights. Nelson's present disability is undisputed.
The trial court concluded that Nelson did not prove an accident. The court of appeal affirmed. Nelson v. Roadway Exp., Inc., 573 So.2d 591 (La.App. 2d Cir.1991). A writ was granted. 577 So.2d 23 (La.1991).

LAW
In 1987, LSA-R.S. 23:1021(1) defined an accident as: "an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury." Although the definition was changed by Act 454 of 1989, the change does not affect this lawsuit. See Leon v. Crowell & Spencer Lumber Co., 151 La. 932, 92 So. 389 (1922).
A claimant must prove that a work-related accident occurred. Holiday v. Borden Chemical, 508 So.2d 1381 (La.1987), on remand, 524 So.2d 285 (La.App. 1st Cir.1988), writ denied, 531 So.2d 283. An accident at work can be proven by a claimant's uncontradicted testimony, corroborated by the medical evidence. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979). Testimony of fellow employees can also corroborate an accident which produces delayed symptoms of serious injury. Holiday.
There is an accidental injury when a worker's normal duties cause a physical breakdown, an accidental result. Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (1969); Ferguson v. HDE, Inc., 270 So.2d 867 (La. 1972); Chism v. Kaiser Aluminum & Chemical Corporation, 332 So.2d 784 (La. 1976); Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976).
The full consequences of a disabling accident are not always apparent when the injury occurs. See Robichaux v. Realty Operators, 195 La. 70, 196 So. 23 (1940). Thus, an employee who finishes a day's work without reporting an accident is not barred from recovering compensation. Nelson's manual labor at Roadway was sufficiently strenuous to cause injury, and *354 there was no evidence that anything else caused his disability. Compare Gorbach v. Prager, Inc., 310 So.2d 604 (La.1975) (plaintiff claimed a job related injury but had been involved in two automobile accidents).

CONCLUSION
Roosevelt Nelson was in good physical condition on his last day of work. Two co-employees confirmed his testimony that he left work in pain that evening. When he arrived home, his wife observed that something was wrong. Nelson awoke about 1:00 a.m. with severe pain. Early the next morning, Nelson called Roadway, reported his back injury and went to the emergency room. On Sunday, his wife drove Nelson to Roadway, where he filled out an accident report and was told to see the company doctor, Dr. Bullock. Nelson saw Dr. Bullock on Monday and was treated for one week before being referred to Dr. Green, the orthopedic surgeon who later operated on his back. Dr. Green said that the lifting injury described by Nelson was more probably than not the reason surgery was required. There was no evidence of other causation.
Nelson's account of his accident was consistent. The emergency room nurse and doctor noted Nelson's complaints of pain, which started while he was lifting heavy boxes. In deposition and at trial, Nelson said he hurt his back around 9:00 p.m. when he caught a heavy box and felt a hard sting in his back. In his report of injury to Roadway, Nelson said the accident occurred while he was "breaking freight." Dr. Green said that Nelson's history of an initial pull or sting, which got better and then worse, was common.
Nothing contradicts Nelson's account of how he sustained his injury. Nelson may have exaggerated the size of the box which caused his injury. Exaggeration is a natural human failing. Aside from minor quibbles which are irrelevant to causation, Nelson's history is factually, legally and medically coherent and proves that he suffered a work related injury at his job. In brief, counsel for Roadway accuses Nelson of making up a story, but the record shows that Nelson hurt his back, is disabled and has been disabled since his last day at work. Nelson's wife, two co-employees, the emergency room record, his report of injury to Roadway and his doctors corroborate his testimony of a back injury at work. The trial court clearly erred in holding that an accident was not proved; there was manifest error.

PENALTIES AND ATTORNEY'S FEES
Nelson's back surgery was delayed because he was unable to obtain worker's compensation. The Louisiana Office of Worker's Compensation recommended in May, 1987, several months before Nelson's operation, that Roadway pay weekly compensation benefits and medical expenses as well as penalties and attorney's fees. While LSA-R.S. 23:1310.1(A) has been amended several times, it currently provides, in pertinent part:
Within thirty days after the receipt of the claim, the office shall issue its recommendation for resolution and provide the parties with a copy of the recommendation by certified mail, return receipt requested. Such recommendation shall be advisory only and may be admissible into evidence in any subsequent legal proceeding; however, the recommendation when admitted into evidence shall not be accorded any presumption of correctness as to the facts or the law.
This is a procedural and evidentiary rule, which is retroactive. Therefore, the recommendation of the Office of Worker's Compensation is not accorded any presumption of correctness but attests only to the fact that the defendant was told at an early date that the Office of Worker's Compensation thought Nelson had a valid claim and that its denial was arbitrary. There is no indication that Roadway made any additional investigation or reconsidered its position. Nelson's health insurer, which initially refused to pay the claim because it was work related, eventually paid for an operation which confirmed the injury.
Although Nelson reported that his injury must have occurred from lifting boxes at work, Long told Nelson to report that the *355 accident occurred in bed. Having forced Nelson to claim union medical benefits with a subterfuge, Roadway emphasizes that inaccurate report to attack his credibility.
Nelson promptly reported his accident and there was no evidence that he is disabled from a pre-existing condition. An unjustified belief that an employee's injury did not result from an accident does not excuse failure to pay worker's compensation benefits. See Self v. Riverside Companies, Inc., 382 So.2d 1037 (La.App. 2d Cir.), writ denied, 385 So.2d 793 (1980), where Judge Marvin stated that refusal of compensation solely because defendant's president "`... felt that the employee's injury was not the result of an accident,'" required penalties and attorney's fees. Id. at 1040.
Roadway knew that Nelson was disabled immediately following his last Friday at work. Nelson had objective symptoms of injury; he reported his injury by telephone Saturday morning and made a written claim on Sunday. It was denied on Monday without investigation or consultation with Nelson's doctors.
An employer who fails to investigate an employee's compensation claim subjects itself to statutory penalties and attorney's fees. See Dowden v. Liberty Mut. Ins. Co., 346 So.2d 1311 (La.App.3d Cir.), writ denied, 350 So.2d 674 (1977); Billiot v. Alton's Bakery of Morgan City, Inc., 398 So.2d 624 (La.App. 1st Cir.1981); Naquin v. Texaco, Inc., 423 So.2d 31 (La. App. 1st Cir.1982). There must be a real or substantial issue to deny benefits to a disabled employee. Lee v. National Tea Co., 378 So.2d 134 (La.App.3d Cir.1979), (citing Guillory v. Travelers Insurance Company, 294 So.2d 215 (La.1974)).
Under the circumstances, Roadway was arbitrary and capricious in refusing to pay worker's compensation benefits and medical expenses.

JUDGMENT
The judgments of the trial court and the court of appeal are reversed.
It is ordered, adjudged and decreed that there be judgment in favor of Roosevelt Nelson and against Roadway Express, Inc. for temporary total benefits from February 28, 1987, until he is physically able to return to self-employment or gainful occupation for wages (LSA-R.S. 23:1221) in the amount of $261.00 weekly[1], with legal interest on past due payments until paid; for penalties of 12% on the total now due; for reasonable attorney's fees; and for all related medical expenses.
The case is remanded to the trial court for the fixing of reasonable attorney's fees.
All costs are taxed to Roadway Express, Inc.
REVERSED, RENDERED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The trial court expressly found that plaintiff's testimony lacked credibility, and the court of appeal concluded that the trial court's credibility determination was not manifestly erroneous. This court's reversal of the judgment is not based on a reevaluation of that credibility determination, but rather is based on the preponderance of the evidence. Even if this court disregards the testimony of the plaintiff that was rejected by the trial court, the remaining uncontradicted evidence preponderates in favor of a conclusion that plaintiff's undisputed disability, more probably than not, was caused by an accident occurring on the job.[1]
NOTES
[1] See Plaintiff # 7, letter from Louisiana Office of Worker's Compensation dated May 21, 1987.
[1] The uncontradicted evidence that plaintiff performed strenuous duties on his last day of work indicates he was not disabled at the beginning of the shift which lasted until 9:30 p.m. Defendant concedes plaintiff reported the injury ten hours later, and the emergency room notes show plaintiff complained the following day of pain from a back injury on the job. The undisputed medical evidence established he was disabled from that time on.