DOMENGEAUX, Chief Judge.
Browning-Ferris, Inc. (BFI) appeals a judgment ordering it to pay Michael Vincent worker’s compensation benefits, medical expenses, penalties and attorney’s fees. For the following reasons, we affirm, as amended.
FACTS
The plaintiff, Michael Vincent, alleges he sustained a work related accident on Octo *48 ber 13, 1989, while he was stacking garbage cans onto a BFI truck. He testified that his back started hurting toward the end of the work day, and after he rested at home later that evening, he could hardly move. The next day, a Saturday, Vincent reported the accident to his supervisor, Jeff Jones, who advised him to go to the emergency room at Calcasieu Cameron Hospital. Vincent was later referred to an orthopedist, Dr. Gerald Litel, by BFI’s safety engineer, Neil Melancon.
Dr. Litel treated Vincent' through January 4, 1990. Vincent’s complaints suggested radicular compression, although a neurological exam and CT scan were normal. Diagnosing low back strain, Dr. Litel treated Vincent conservatively with three months of physical therapy. He released Vincent to return to work on January 4, 1990, and BFI terminated Vincent’s compensation benefits as of January 6, 1990.
Vincent did return to work on light duty, but he testified that on his second day back, his right leg “gave out.” He was then seen by another orthopedist, Dr. Lynn Foret, on two occasions, January 12, 1990 and March 6, 1990. Dr. Foret noted that the CT scan was essentially negative, but that x-rays showed a mild straightening of the lumbar spine, which suggested some muscle tenseness. At his last visit, Dr. Foret observed leg raising weakness on the right side. Although the neurological exam was normal and Dr. Foret suspected the problem was muscular or myofacial, he noted that there could be evidence of an overlapping disc problem. He testified he would have protected Vincent from work for about six weeks after the date of his last visit. Dr. Foret also indicated that further diagnostic testing was in order, but for unknown reasons, Vincent did not return for further treatment. Vincent testified he did not return to Dr. Foret because BFI refused to pay any more medical bills. He did call Dr. Foret’s office in April of 1990 for medication, complaining of pain and numbness in the right leg.
Beginning in July of 1990, Vincent sought medical treatment at local charity hospitals where various diagnostic tests were performed. A lumbar myelogram revealed a mild bulge at L4-5, and an EMG performed by Dr. Fayez Shamieh revealed a mild nerve root irritation at L5 on the right.
Vincent then sought treatment from Dr. William Foster, a neurosurgeon. Dr. Foster ordered a bone scan and an MRI, both of which were normal, except for the mild bulge previously identified. The MRI also revealed that Vincent had a congenital condition known as spinal stenosis, or a narrowing of the spinal canal. Dr. Foster testified that the stenosis would affect the length of recovery of the spine from a severe straining injury, although he also stated that any muscle strain caused by the accident in October of 1989 should have been resolved. Because Vincent still exhibited objective symptoms such as diminished sensation and ankle jerk, he believed a dis-kogram would be in order. Although he found no disc herniation, he noted that the nerve root irritation identified by Dr. Sham-ieh correlated with the area of the bulging disc and with the narrowest part of the spinal canal. Further, Dr. Foster stated that the results of the EMG were consistent with Vincent’s complaints. Neither Dr. Foret nor Dr. Foster has ever released Vincent to return to work.
ACCIDENT
BFI first argues that Vincent has failed to prove that he sustained a work related accident. BFI points to Vincent’s testimony at trial, where he stated that he could not remember a specific incident or time when he hurt his back.
Vincent did testify that his back began hurting near the end of the October 13, 1989 work day, after he had been “throwing” cans onto the back of a BFI truck. He testified that he called his supervisor at home to report the accident on the next day, a Saturday. An accident report dated October 18, 1989 notes, “Employee alleges that he was picking up carts and throwing them in the back of a flatbed truck.” Drs. Foster and Foret testified that Vincent related the onset of his injury to lifting gar *49 bage cans and that his symptoms were consistent with this activity.
In Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992), the Supreme Court recently summarized the jurisprudence concerning proof of a work related accident:
Louisiana courts consistently have interpreted the work-related accident requirement liberally. Williams v. Regional Transit Authority, 546 So.2d 150, 156 (La.1989). Indeed, it is well-settled in Louisiana that an “accident” exists when “heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition.” Cutno v. Neeb Kearney & Co., 237 La. 828, 112 So.2d 628, 631 (1959); Nelson [v. Roadway Express, Inc.] supra [588 So.2d 350 (La.1991)] (collecting cases). Moreover, Louisiana courts view the question of whether there was an accident from the worker’s perspective. Williams, supra.
Despite the liberal construction of the statute afforded the worker in a compensation action, the worker’s burden of proof is not relaxed. Prim v. City of Shreveport, 297 So.2d 421 (La.1974). Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Id.; Nelson, supra. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Malone and Johnson, IS Louisiana Civil Law Treatise, Workers’ Compensation, § 253 (2d Ed. 1980). Corroboration of the worker’s testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, supra; Nelson, supra. Corroboration may also be provided by medical evidence. West, supra.
Vincent’s testimony regarding the onset of his symptoms and when the accident was reported was uncontradicted. Vincent provided the same accident history, first to his employer and later to his three treating physicians. He reported the accident as soon as was practicable, even though that meant calling his supervisor at home on a nonworking day. His treating physicians testified that the symptoms reported are consistent with the activity described. Considering the well documented accident history, we find no manifest error in the trial court’s conclusion that Vincent sustained a work related accident on October 13, 1989.
CAUSATION
BFI next argues that the trial court erred in finding that Vincent’s present disability was caused by a work related accident. BFI contends that Vincent was not in good health prior to the accident because of the pre-existing stenosis and because of prior muscle strain that occurred three years earlier. BFI also argues that the medical evidence does not prove by a preponderance of the evidence that the preexisting stenosis was aggravated by this accident.
Although the congenital condition of stenosis predated the accident, Vincent exhibited no disabling symptoms before October 13, 1989. Further, there is no testimony that stenosis is a degenerative condition, nor was there any evidence that Vincent’s earlier muscle strain contributed to his present disability. The record shows that Vincent was able to perform his duties of a truck driver/laborer from May 1989 through October 13,1989, the dates of his employment with BFI.
Dr. Foret related Vincent’s complaints to his accident at work. Dr. Foster testified that although Vincent’s lumbar strain had been resolved, Vincent still exhibited symptoms of the nerve root irritation that was identified by Dr. Shamieh. According to Dr; Foster, manual labor could make the stenosis symptomatic, and the stenosis *50 could affect the length of recovery from a muscle strain. He further testified that with a narrow spinal canal, even a minor disc problem could compromise or irritate a nerve root. Dr. Foster recommended further diagnostic testing in view of the objective symptoms observed and the physical abnormalities identified. He testified that Vincent was disabled from working due to the stenosis.
The jurisprudence is clear that an employer takes the employee as he finds him, and that an employee’s disability is com-pensable if a work related accident aggravates or accelerates a pre-existing condition to produce disability. Laughlin v. City of Crowley, 411 So.2d 708 (La.App. 3d Cir.1982). We can find no error in the trial court’s finding that the plaintiff’s disability is causally related to his accident of October 13, 1989.
PENALTIES AND ATTORNEY’S FEES
BFI next avers that it properly relied upon the report of Dr. Litel, which unconditionally released Vincent, in its decision to terminate Vincent’s benefits. Therefore, BFI argues, the trial court erred in awarding Vincent penalties and attorney’s fees.
La.R.S. 23:1201E subjects an employer to a 12% penalty on any unpaid compensation installments, unless the employer reasonably controverts the employee’s right to benefits. The employee’s right to receive such benefits will be deemed reasonably controverted if the employer had a reasonable basis, given the lay and expert medical evidence, for believing that medical expenses and compensation benefits were not due. Aguillard v. Industrial Construction Co., Inc., 542 So.2d 774 (La.App. 3d Cir.1989).
La.R.S. 23:1201.2 authorizes an award of attorney’s fees when the employer’s failure to pay a claim within 60 days of written notice is found to be arbitrary, capricious, or without probable cause. On appellate review, a trial court’s award of statutory penalties will not be reversed unless that determination is manifestly erroneous. Fontenot v. T.L. James & Co., Inc., 563 So.2d 909 (La.App. 3d Cir.1990).
BFI was initially justified in terminating benefits based upon the report of Dr. Litel. However, subsequent events established that Vincent was not yet capable of working. He returned to work with BFI, but he was unable to perform even light duty tasks. He was seen by another orthopedist, Dr. Foret, who observed that Vincent’s back muscles were still tender. BFI paid for the first visit to Dr. Foret, but it did not reinstate Vincent’s benefits.
The record is unclear as to what medical information BFI had after Vincent was seen by Dr. Foret. Vincent testified that he brought a report from Dr. Foret to BFI and that he repeatedly spoke to an adjuster about his case. BFI does not state whether it actually received Dr. Foret’s report; it only argues that any report from Dr. Foret merely confirmed Dr. Litel’s diagnosis of a low back strain.
In January of 1990, BFI did know that Vincent had unsuccessfully attempted to work and that Vincent was being treated by another physician (whose bill BFI paid). At this point we find BFI should have further investigated the case. See, e.g., Slate v. Travelers Ins. Co., 556 So.2d 903 (La.App. 3d Cir.1990). However, according to plaintiff’s counsel, BFI did not even request a report from Dr. Foret. Even if Dr. Foret’s diagnosis was the same as Dr. Li-tel’s, BFI should have realized that Vincent’s back strain had not yet healed. Later, after April of 1991, BFI became informed of the diagnostic testing results which revealed a mild bulge and a nerve root irritation. Again, BFI was in possession of facts which warranted further investigation. Considering the above, we can find no error in the trial court’s imposition of penalties and attorney’s fees.
Vincent has answered the appeal, seeking an increase in attorney’s fees for work performed by his counsel on appeal. We find the record supports an award of additional attorney’s fees in the amount of $2,000.00.
For the above reasons, the judgment of the trial court is affirmed but is amended *51 to award the plaintiff additional attorney’s fees in the amount of $2,000.00. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED AS AMENDED.