STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


18-843


DEKEISHA LASHUN CHAISSON

VERSUS

COMPASS GROUP, USA, INC., ET AL.


**********


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 17-04200
SHARON MORROW, WORKERS' COMPENSATION JUDGE


**********


**JONATHAN W. PERRY**
**JUDGE**


Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**AFFIRMED.**

Tracy P. Curtis
The Glenn Armentor Law Corp.
300 Stewart Street
Lafayette, Louisiana  70501
COUNSEL FOR PLAINTIFF/APPELLANT:
     Dekeisha Lashun Chaisson


Eric E. Pope
Pamela N. Molnar
Blue Williams, LLP
3421 North Causeway Blvd., Suite 900
Metairie, Louisiana  70002
COUNSEL FOR DEFENDANT/APPELLEE:
     Compass Group, USA, Inc.

**PERRY, Judge.**

Dekeisha Lashun Chaisson (Chaisson) appeals the workers' compensation judgment denying her claim for workers' compensation benefits based on her failure to prove the occurrence of an accident arising out of and in the course and scope of her employment with Defendant, Compass Group, USA, Inc. (Compass). For the following reasons, the judgment of the Office of Workers' Compensation is affirmed.

## FACTS

Bateman Community Living,[1] which is owned and operated by Compass, employed Chaisson as a caterer from August 10, 2015, until her termination on June 21, 2017. Her duties involved delivering and serving food at different locations.

On July 12, 2017, Chaisson filed a Form 1008 Disputed Claim for Compensation (1008) seeking benefits and medical treatment pursuant to the Louisiana Workers' Compensation Act, La.R.S. 23:1021–1415, for injuries she allegedly sustained in two separate workplace accidents. In the 1008, Chaisson alleged an accident was reported on March 25, 2017, to Supervisor, Paul Scelfo (Scelfo), and described: "Lifting filled catering trays[.] First injured while lifting heavy, long pans filled with food in September 2016, claimant continued to work in pain. On 5-25-17, she re-injured her spine. Pain, including headaches, caused claimant to miss many days of work for which she was terminated." Chaisson sought an additional award for statutory penalties and attorney fees, asserting Compass refused to pay benefits or authorize medical treatment.

In its August 2017 Answer, Compass denied Chaisson's entitlement to workers' compensation benefits, disputed her disability, and denied liability for

---

[1] Throughout the proceedings, the parties often refer to Chaisson's employer as "Bateman."

penalties and attorney fees on the basis that Chaisson never reported a workplace injury. In addition, Compass asserted a fraud claim against Chaisson pursuant to La.R.S. 23:1208.

On November 21, 2017, Chaisson filed a First Amended Form 1008 Disputed Claim for Compensation (Amended 1008). In the Amended 1008, Chaisson alleged an accident was reported on May 23, 2017, to Scelfo, and described:

> Lifting filled catering trays[.] Claimant first injured her low back while lifting heavy, long pans filled with food in September 2015.[2] Claimant continued to work in pain. On or about May 23 or 24, 2017,[3] she injured her left neck with radiating pain to the back, and aggravated her low back while lifting pans at work. At Lafayette General [Medical Center (LGMC)] May 25, claimant recalled no accident. The healthcare provider concluded that lifting the pans at work two days prior caused the left lateral neck pain that radiated down posterior back.

Compass reiterated its denials in answer to the Amended 1008.

Following a trial on April 26, 2018, the workers' compensation judge (WCJ) ruled in favor of Compass and dismissed Chaisson's claims. Chaisson appeals. For the reasons that follow, we must affirm.

In her first assignment of error, Chaisson alleges the WCJ committed an error of law in reaching the decision that the criteria set forth in *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992), did not apply to her unwitnessed work injury. Secondly, she assigns error to the denial of her claims for workers' compensation benefits, as well as penalties and attorney fees.[4]

It is Chaisson's contention the WCJ's ruling was primarily based upon Chaisson's formal claim being filed only after being terminated sixteen workdays

---

[2] The 1008 initially alleged Chaisson's first accident was in September 2016.

[3] The 1008 initially alleged Chaisson's second accident was on May 25, 2017.

[4] While Chaisson claims two injuries, in brief she concedes entitlement solely to medical-related benefits for the September 2015 incident and asserts her "appeal primarily addresses the most recent, neck injury for which the law entitled plaintiff to all worker[s'] compensation benefits."

2

after her injury. According to Chaisson, Compass knew she suffered injuries at work, knew she sought medical treatment, and knew her absences were due to injury-related pain. Compass repudiates any workplace accident or injury ever occurred, claims Chaisson was justly terminated for excessive absences, and charges Chaisson with filing her claim to punish Compass for her termination.

## LAW AND DISCUSSION

Appellate courts review factual determinations in workers' compensation cases using the manifest error standard of review. *Smith v. Louisiana Dep't of Corrs.*, 93-1305 (La. 2/28/94), 633 So.2d 129. Only if we find the trial court committed an error of law that interdicted the fact-finding process will we conduct a *de novo* review. *Campo v. Correa*, 01-2707 (La. 6/21/02), 828 So.2d 502.

In *Bruno*, 593 So.2d 357, 361, the Louisiana Supreme Court considered a workers' compensation case where, as here, the accident was unwitnessed, and set forth the claimant's burden of proof and the criteria to be used by courts in determining whether an unwitnessed but compensable accident has occurred:

> [T]he plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. [*Prim v. City of Shreveport*, 297 So.2d 421 (La.1974)]; *Nelson* [*v. Roadway Express, Inc.*, 588 So.2d 350 (La. 1991)]. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson*, [588 So.2d 350]. Corroboration may also be provided by medical evidence. *West*, [371 So.2d 1146].

After examination of the evidence, we find the record supports the WCJ's conclusion Chaisson failed to prove a compensable injury by a preponderance of the evidence.

At trial, Chaisson's co-employee, Preston Edwards, testified on her behalf. When asked whether he recalled Chaisson "ever complaining or being injured on the job[,]" he replied, "Yes . . . she was complaining about lifting up heavy things, where she couldn't raise up things over. . . . Like pans . . . she carries around[.]" Edwards claimed Chaisson told him she injured her back. He testified he occasionally assisted Chaisson by loading items which were too heavy for her to lift. Edwards, however, was not aware if Chaisson ever complained of her pain to any other co-workers or to Scelfo, the supervisor. On cross-examination, Edwards testified he could not recall when Chaisson's complaints of back pain began.

Doddie Lange, an Administrative Assistant employed by Compass, was also called to testify during Chaisson's case-in-chief. Her duties involved maintaining employee's personnel files, documenting hire records, attendance, excuses, and accident reports. Lange confirmed from Time Off Worksheets that Chaisson was absent from work on September 28, 2015, and did not return until October 2, 2015. Lange denied knowing or having any record of Chaisson seeking treatment for back pain at LGMC on September 28, 2015.

Lange also established Chaisson worked on May 24, 2017, was "out" on May 25, 2017, was "off" May 26, 2017, and returned to work on Tuesday, May 30, 2017, after the three-day Memorial Day Holiday weekend. Lange denied knowing or having any record of Chaisson seeking treatment for a neck injury at LGMC on May 25, 2017. When asked whether Chaisson complained of hurting her neck at work in May 2017, Lange responded, "The only time she complained about an injury, I do not remember what the injury was, and I automatically told her, 'If you're hurt, you know you need to go to your manager.' And she said it didn't happen here. Her horse kicked her."

4

Another of Lange's duties was to reproduce an Injury Free Certification/Acknowledgement form weekly. The employees signed the form every Friday. Lange confirmed Chaisson did not sign the injury-free certificate for the week of May 22 through May 26, 2017. Finally, Lange verified that after returning to work on May 30, 2017, Chaisson worked an additional sixteen days before her termination on June 21, 2017. Lange was not cross-examined; Compass, instead, reserved its right to re-call and question Lange during its case-in-chief.

In her testimony, Chaisson stated she worked for Bateman as a driver and a server, delivering food to various locations. When asked to describe her September 2015 accident, Chaisson specified she was at J.S. Clark Academy in Opelousas, Louisiana, when she injured her back while lifting up a pan in the process of unloading her truck. This occurred on September 28, 2015. She did not immediately return to Lafayette because "she had to serve the food for the kids. . . . Because they had no one else to come over there." Chaisson claimed she told Scelfo, both by calling him on the telephone from the school and by speaking to him in person when she returned to Bateman in Lafayette. She stated Scelfo did not fill out an accident report nor did he offer her any medical attention; instead, she "told him that I got hurt and that I'd have to go to the doctor." She then went to the emergency room at LGMC. The LGMC's medical records for September 28, 2015 reflect Chaisson's "History of Present Illness" as:

> The patient presents with back pain. The onset was 2 days ago. The course/duration of symptoms is worsening. Type of injury: lifting and turning. Location: Bilateral lumbar. Radiating pain: none. The character of symptoms is sharp and achy. The degree at onset was minimal. The degree at present is moderate. There are exacerbating factors including movement and bending over. The relieving factor is none. Risk factors consist of none. Prior episodes: occasional. Therapy today: over the counter medications. Associated symptoms: none. Additional history: none.

5

Chaisson testified she did not recall if she missed any time from work because of that injury, explaining she continued to work, even though in pain, because she needed her job.

When asked to describe her accident of May 2017, Chaisson recalled reaching for pans above her head when she injured her neck and reinjured her lower back; however, she could not remember where exactly she was when her injury occurred. Chaisson claimed she told Scelfo also of this injury both by telephone and in person, but Scelfo did not fill out an accident report nor did he offer her any medical attention. She stated the next morning she called Scelfo and told him she could not work because she had to go to the hospital. The LGMC's medical records of May 25, 2017 reflect Chaisson's "History of Present Illness" as:

> The . . . 43 y/o female presents with left side of neck and left side of back pain that started yesterday. [S]tates hurts to touch and movement. [S]tates she lifts pans at work. [D]enies any injury/trauma. . . . 43-year-old black female complains of left lateral neck pain radiating down posterior back worse with movement and deep breathing. States started yesterday. Denies injury. But does lift on heavy pans work. . . . The onset was 2 days ago. The course/duration of symptoms is constant. Location: Left Lateral neck and left upper back. Type of injury: none. The location where the incident occurred was at work. Radiating pain to the back. The character of symptoms is pain. The degree at present is moderate. The exacerbating factor is movement. The relieving factor is none. Risk factors consist of none. Prior episodes: none. Therapy today: none. Associated symptoms: none.

Chaisson testified that she missed work the following day, May 26, 2017, because she had an excuse from LGMC. She claimed she gave Scelfo her excuse and "[h]e made a copy in the front by the secretary desk and put it in my folder."

Chaisson testified she returned and continued to work, even though in pain, because she needed the money and the job. When asked why she filed her workers' compensation claim after she was terminated, Chaisson answered, "Because he -- he really fired me for nothing. He knew I was working, being hurt."

Under cross-examination, Chaisson reaffirmed that her original accident was on September 28, 2015, and occurred at J.S. Clark Academy. She testified that when she called Scelfo to report she was hurt, he told her, "He didn't have nobody to send there for me, and he said I was always complaining about something." After Chaisson was asked "what else were you complaining about[,]" the following exchange ensued:

A. My neck and my back about that, and I was working by myself.

Q. Okay. Now, this is September 28, 2015, when your accident occurred. Were you complaining about your neck and your back before that?

A. I didn't complain about my neck. I was complaining about my back.

Q. You were complaining about your back before September 28, 2015?

A. No.

Q. Okay. So I'm confused. When you called Paul [Scelfo] on September 28, 2015, to tell him you hurt yourself at work and he said he was tired of you complaining, what was he talking about?

A. Because I told him I needed help at the school. I was by myself.

Q. So you'd been working at the school for a while and having problems?

A. Yes.

Q. And had asked for help before September 28, 2015?

A. Yes. There was supposed to be two people working that regardless.

Chaisson testified she kept working after September 2015, even though she was in pain, but claimed Scelfo knew she was working in pain. According to Chaisson, she never had a conversation with Scelfo about filing a workers' compensation claim or about receiving any kind of accommodation at work, nor did

7

she seek any other medical treatment for her back injury between September 2015 and May 2017.

Chaisson claimed she told Lange about her May 2017 injury "maybe once or twice" and gave Scelfo documentation from LGMC, but she could not remember where exactly she was when she injured her neck. She disputed LGMC's medical records of May 25, 2017, which indicate she denied any injury or trauma. According to Chaisson, "I told them exactly what happened."

Chaisson was next asked about her termination on June 21, 2017. She admitted sending a text message to Scelfo stating, "I'm coming for Bateman." This colloquy followed:

> Q. And then I think the next day or a day later a letter of representation went out from your attorney. You retained an attorney immediately after you got fired?
>
> A. Yes.
>
> Q. Okay. To file this workers' compensation claim?
>
> A. Because I was -- I was fired for no reason.
>
> Q. Okay.
>
> A. And I told them I was working while I was hurt.
>
> Q. Is there any reason you didn't mention being hurt to Paul when you texted him that text?
>
> A. Well, Paul already knew that. Many a times I told that to Paul when I would go in Paul's office.

Chaisson claimed Scelfo frequently arranged for other employees to load her truck in the morning because he knew she was hurting. She denied it was a customary occurrence for other employees to load the pans of food into every truck each morning.

Chaisson testified she had headaches and pain in her neck and back due to two workplace accidents. She claimed she began having painful headaches after her May

8

2017 accident. Despite medical records from LGMC dated May 30, 2015 and March 18, 2017 which indicate she reported suffering headaches, Chaisson denied seeking treatment from LGMC for headaches. She claimed she sought treatment for a cold, not headaches, on March 18, 2017.

Chaisson was questioned about her first accident, which she claimed occurred on September 28, 2015 at J.S. Clark Academy. When confronted with her employment record which showed she was not at work that day, the following exchange ensued:

A.    . . . I can't recall, which I don't remember the exact date that -- that's the day I went to the hospital. It must have been the day before because I did go to the hospital behind it.

Q.    Okay. The day before is a weekend, though.

A.    I can't -- then I can't explain all them questions.

Q.    Okay.

A.    I'm trying to see if that's when my excuses was still led to.

Q.    You didn't work on Saturday and Sunday, though, did you?

A.    No. I'm talking about from the Friday. I can't really remember the date that it really happened.

Q.    Okay.

A.    I can't recall the date.

When asked about the injury-free certificates, Chaisson testified that although there were times she would not sign the form because she missed work or worked offsite, she typically signed them because they were presented on a table where she would pick up her check. When asked, "So even though it's an injury-free certification, you would sign it even if you were having problems[,]" she replied, "Most of the time." She testified she would sometimes not sign the injury-free certificates because she was having problems.

9

On re-direct examination, Chaisson was only questioned about the text message she sent to Scelfo shortly after being terminated. The following exchange occurred:

Q. I'm interested in the text you -- where you have in all cap[s], "YOU USED ME." What were you referring to when you texted Mr. Scelfo that he used you?

A. As going doing things for him that I wasn't supposed to on the job at work. Doing him favors, going to the store for him. I was staying doing more work than I was supposed to be.

Q. How about working in pain?

A. He knew that.

This ended Chaisson's testimony and the presentation of her evidence.

Compass re-called Lange to the stand. According to Lange, Chaisson only mentioned an incident involving her horse, never a workplace accident. Lange explained that Compass's protocol required employees to report a workplace accident to their supervisors, which was then reported to the corporate office. Lange denied ever receiving any medical records concerning Chaisson, saying "The only stuff I saw was the first stuff that came from the attorney about the bill." Lange testified she reviewed Chaisson's personnel file for trial and found nothing related to a work injury. She testified Scelfo was aware of Compass's protocol for reporting and confirmed he had reported workplace accidents in the past.

Lange was also asked about Chaisson's claim she had asked for a helper when she worked at J.S. Clark Academy because of problems she was having physically. According to Lange, Chaisson "indicated she liked working by herself. She didn't like working with other people." Lange claimed Chaisson once told her of being tired so Lange told Chaisson to tell Scelfo if she needed time off or if she needed help, to which Lange stated Chaisson replied, "no, I like working by myself."

Under cross-examination, Lange reiterated Chaisson did not complain to her of an injury suffered while at work. According to Lange, Chaisson indicated the pans were heavy but did not ever say she could not work because they were too heavy.

Compass next called Scelfo to the stand. Scelfo testified he has been employed as a Unit Director for Compass since August 17, 2015. According to Scelfo, Chaisson was not working at J.S. Clark Academy on September 28, 2015, when she alleges her first injury occurred. Scelfo claimed he worked at the school from September 23, 2015 until October 10, 2015, after which Chaisson worked at the school. Scelfo also disputed Chaisson's claims that she asked for help with her work duties while working at the school.

Scelfo testified Chaisson never told him she was injured at work and denied Chaisson told him she was having neck or back pain because of work-related injuries. He recalled Chaisson complained that her knee hurt, but claimed she told him she hurt it when she fell while walking down stairs at her house. Scelfo testified Chaisson would inform him when she was sick, but he refuted Chaisson's claim he was given medical excuses or records related to a work-related injury.

Scelfo explained Compass's protocol required him to compose a written injury report, which he then gave to the human resources department. Scelfo testified he first heard Chaisson claimed a work-related injury when Compass received a letter of representation from her attorney.

Under cross-examination, Scelfo conceded that as a Unit Director, it would be beneficial to have an accident-free unit. When asked whether he knew anyone that makes nine dollars and fifty cents an hour who owns a horse, Scelfo replied he did not know anyone who owned a horse. Next, he reiterated that from September 23, 2015 through October 10, 2015, he alone brought and served breakfast, lunch,

11

and snacks to J.S. Clark Academy. When asked his height, Scelfo testified he is six feet tall. He acknowledged he is responsible for hiring and firing and his supervisors hold him accountable for his unit's profits.

Following Scelfo, the defense rested its case and Chaisson returned to the stand on rebuttal. Chaisson denied ever owning a horse. She also denied having stairs in her home. This concluded Chaisson's testimony and trial.

The WCJ issued an oral ruling immediately at the conclusion of trial, denying Compass's fraud claim and Chaisson's claim for workers' compensation benefits. The WCJ opined, in pertinent part:

> It is, as we discussed at the outset, more of a he-said/she-said credibility-type determination. It's not quite a *Bruno*, situation, or it's not a classic, I guess in my mind, *Bruno* situation because there is some corroboration, although, it is a little mild in nature. There are hospital or healthcare visits at approximately the times complained of. And then we have the first witness who, Mr. Edwards, my understanding of his testimony is that he did hear her complain. I did not hear him testify that he heard her complain of an accident, my words, in the sense that that term is defined in the Workers' Compensation Act and under the jurisprudence under the Act.
>
> And I was also going to ask, but I did not, how tall was Mr. Edwards, because he certainly wasn't much taller, I think, than Ms. Chaisson. But any way, the corroboration that exists is mild, but there is some. Therefore, it's not what I call a classic *Bruno* case. So it is more down to weighing the evidence and the credibility of Ms. Chaisson, and I find the probabilities to be evenly balanced, and Ms. Chaisson does not prevail today because there are just too many discrepancies.

Considering Chaisson "notified [Scelfo] in a bit of detail and without hesitation when she was not feeling well, and it would be shocking to me if she was having back and neck and knee complaints related to a work accident and there was no text message about it[]" the WCJ did not "place any weight on [Chaisson's] testimony" that she only verbalized her pain complaints to Scelfo. Consequently, the WCJ ruled Chaisson "failed to bear her burden of proving an accident in the course and scope of employment by a preponderance of the evidence, and therefore find that the case

should be dismissed with prejudice." A written judgment to this effect and which assessed Chaisson with court costs was signed on May 10, 2018.

Chaisson's arguments herein suggest that only her testimony should be considered to determine whether a workplace accident has been proven. We cannot ignore, however, our review of the record which reveals contradictions and inconsistencies throughout. Considering the *Bruno* criteria, the record supports the conclusion that other testimony and medical evidence discredited and cast serious doubt upon Chaisson's allegations.

Chaisson alleged an injury on September 28, 2015. Although medical records show she did seek treatment at LGMC on September 28, 2015, evidence disputes she worked that day at J.S. Clark Academy, as she claimed. Also suspect is the fact that Chaisson could remember specifics about the September 2015 incident, but could not remember specifics about the May 2017 incident. Although medical records show Chaisson did seek treatment at LGMC on May 25, 2017, she denied an injury at the time of treatment. Further, Edwards did not convincingly corroborate Chaisson's injuries, noting he only heard her mention back pain. Chaisson alleged her back was injured in September 2015 and her neck was injured in May 2017. Thus, we must agree with the WCJ's characterization that Chaisson's testimony was only mildly corroborated.

Finally, there is clear conflict in the testimony, requiring an evaluation of credibility. Both Lange and Scelfo vehemently disputed Chaisson claims she informed them of her workplace accidents and injuries. Even though an appellate court may feel its own evaluations and inferences are reasonable, the factfinder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflicts exist in the testimony. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

13

We must agree with the WCJ's conclusion that the inconsistencies noted above indicate Chaisson failed to prove a workplace injury by a preponderance of the evidence. In view of our holding, it is not necessary that we consider Chaisson's assignment of error number two.

## DECREE

For the foregoing reasons, the judgment of the workers' compensation judge is affirmed. All costs of this appeal are assessed to Dekeisha Lashun Chaisson.

**AFFIRMED.**